Case No. 23-cv-00562-jdp

United States District Court
Western District of Wisconsin

Bank of North Dakota, Appellant v.
Dennis Westley Eliason and Amy Marie Eliason, Appellees

Appeal from the United States Bankruptcy Court for the
Western District of Wisconsin

---

## APPELLANT BANK OF NORTH DAKOTA'S BRIEF IN SUPPORT

---

Submitted by:

C. Anthony Crnic
Special Assistant Attorney General
925 E 4th St.
Waterloo, IA 50703
319-234-2530
tcrnic@sayerlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................4

JURISDICTIONAL STATEMENT ....................................................................6

STATEMENT OF ISSUES PRESENTED ...........................................................7

STANDARD OF REVIEW ..................................................................................7

STATEMENT OF THE CASE.............................................................................8

SUMMARY OF THE ARGUMENT ...................................................................10

ARGUMENT .......................................................................................................13

**I.      The Evidence Does Not Support the Court's Finding that the Eliasons Met Their Very Difficult Burden to Prove Good Faith Pursuant to that Prong of the *Brunner* Test ........................................................13**

**II.      The Evidence Does Not Support the Court's Finding that the Eliasons Met Their High Bar to Prove Additional Exceptional Circumstances Pursuant to that Prong of the *Brunner* Test........................................22**

CONCLUSION..............................................................................................29

PROOF OF SERVICE...................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Brunner v. New York State Higher Education Services Corp.*, 331 F.2d 395 (2nd Cir. 1987) ........................................................................................ 8, 13, 27

*Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 783 (8th Cir. 2009) ..........16

*Fifth Third Bank v. Edgar County. Bank & Trust*, 482 F.3d 904 (7th Cir. 2007).....6

*Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir. 2002) ....... passim

*Grogan v. Garner*, 498 U.S. 279, 291 (1991)..........................................................13

*Hoskins v. Educ. Credit Mgmt. Corp.* (In re *Hoskins*), 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003) .......................................................................................................23

*In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985)...........................................................13

*In re Cheesman*, 25 F.3d 356, 362 (6th Cir. 1994) ..................................................16

*In re Katz*, 318 B.R. 495, 501 .................................................................................27

*In re Modeen*, 586 B.R. 298, 302-303 (Bankr. W.D. Wis. 2018) ................... passim

*In re Mosko*, 15 F.3d 319, 324 (4th Cir. 2008).........................................................16

*In re O'Hearn*, 339 F.3d 559 (7th Cir. 2003) ...........................................................7

*In re Rappaport*, 16 B.R. 615, 617 (Bankr. D.N.J. 1981) .......................................14

*In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) ..................................... passim

*In re Spence*, 541 F.3d 538, 545 (4th Cir. 2008) .....................................................16

*Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013). 15, 21, 24

*Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 761 (7th Cir. 2015) ....... 10, 22

**Statutes**

11 U.S.C. § 523(a)(8)......................................................................................6, 8

28 U.S.C. § 158(a)(1).........................................................................................6

**Other Authorities**

Report of the Commission on the Bankruptcy Laws of the United States, House

Doc. No. 93-137, Pt. I, 93d Cong., 1st Sess. (1973)..............................................14

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). In an adversary proceeding, the Bankruptcy Court's order and memorandum decision dated August 8, 2023 definitively resolved the issue of whether the Court would discharge Appellee Amy Marie Elisaon's[1] student loans held by Appellant Bank of North Dakota (BOND) pursuant to 11 U.S.C. § 523(a)(8), and is therefore appealable. *Fifth Third Bank v. Edgar County Bank & Trust*, 482 F.3d 904 (7th Cir. 2007) (other citations omitted). North Dakota filed a timely notice of appeal on August 21, 2023.

---

[1] Amy Marie Eliason is referred to as "Amy" *infra*. Amy's Co-Plaintiff Dennis Westley Eliason is referred to as "Dennis" *infra*. Collectively, Amy and Dennis are referred to as the "Eliasons."

## STATEMENT OF ISSUES PRESENTED

I.      Whether the Court erred in finding the Eliasons met their burden of proving the "good faith" prong of the *Brunner* test.

II.     Whether the Court erred in finding the Eliasons met their burden of proving the "additional exceptional circumstances" prong of the *Brunner* test.

## STANDARD OF REVIEW

Both issues involve whether the Eliasons met the undue hardship test and as a result the standard of review is *de novo*. *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir. 2002) (citation omitted). Additionally, the Court also adopts the bankruptcy court's findings of fact unless they are clearly erroneous. *Id.* (other citations omitted).

## STATEMENT OF THE CASE

This appeal is brought from the Eliasons' adversary proceeding to have Amy's student loans with BOND discharged pursuant to 11 U.S.C. § 523(a)(8). Under 11 U.S.C. § 523(a)(8), the Court can discharge student loans if the debtors prove that non-discharging them would cause an "undue hardship" on them. The test the Seventh Circuit uses to determine whether an undue hardship exists is known as the *Brunner* test. *Brunner v. New York State Higher Education Services Corp*., 331 F.2d 395 (2nd Cir. 1987); *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993).

The test consists of three prongs, all of which the debtor must prove by a preponderance of the evidence. *Goulet* 284 F.3d at 777 (citation omitted). The first prong, which BOND is not appealing, is whether the debtors "cannot maintain, based on current income expenses, a minimal standard of living for himself and his dependents if forced to repay the loans." *Roberson*, 999 F.2d at 1135. The second prong is that "additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the student loans[.]" *Id*. The third prong is whether "the debtor has made good faith efforts to repay the loans." *Id*.

The Bankruptcy Court found that the Eliasons met all three prongs of the *Brunner* test and discharged Amy's student loans. The Court erred in that

Page 8 of 30

determination. More specifically, the Court erred in finding the facts and evidence supported that the Eliasons met their burden to prove the second and third prongs of the *Brunner* test.

## <u>SUMMARY OF THE ARGUMENT</u>

The Court erred in finding that the Eliasons met their burden to prove the good faith prong of the *Brunner* test. Factors courts consider in determining whether a debtor meets their burden under the good faith prong include whether a debtor is diligent in their pursuit of employment along with whether they tried to "maximize income and minimize expenses." *In re Roberson*, 999 F.2d at 1135.

Additionally, the student loan default must not have occurred because of the debtor's "willful or negligent actions[,]" instead the cause must be the result of "factors beyond [their] reasonable control." *Id.*  This inquiry requires the court to assess a debtor's past effort to make payments on the loans at issue. *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 761 (7th Cir. 2015) (other citation omitted). Whether applying for forbearances or deferments of the loans is indicative of good faith appears to be unresolved in the Seventh Circuit, though in at least one instance, the court seemed to look unfavorably on the notion. *Goulet* 284 F.3d at 779. Overall, the burden for the debtor to prove good faith is very difficult. *Brunner*, 46 B.R. at 755.

The evidence shows the Eliasons did not meet their very difficult burden. They made no payments on Amy's student loans. (Appx. 144:4-16, 148:8-19). Amy also did not really try to get her certification beyond some perfunctory inquires shortly after she graduated college. (Appx. 57:16-58:1, 58:13-59:1, 60:2-

10, 96:8-20). She did contact BOND to work out payment arrangements at one point (Appx. 64:5-14), but that contact trailed off. (Appx. 166-168).

The Eliasons also did not minimize their expenses. With regard to maximizing her employment, Amy worked a string of full and part time jobs over the years, staying at few of them for any length of time. (Appx. 66-74). There is also no evidence in the record that Amy put much of an effort into finding employment in the field she went to college for, which should pay more than the entry-level jobs Amy seems to have held. Amy's pay did steadily increase though. Overall, the evidence shows the Eliasons did not meet the very difficult burden of good faith under the *Brunner* test.

The Court erred in finding that the Eliasons met their burden to prove the additional, exceptional circumstances prong of the *Brunner* test. The Eliasons must prove the high bar that additional exceptional circumstances make future repayment improbable. *In re Modeen*, 586 B.R. 298, 302-303 (Bankr. W.D. Wis. 2018) (quoting *Roberson*, 999 F.2d at 1136). The court has used factors like "psychiatric problems, lack of usable job skills, and severely limited education" along with others to test whether additional exceptional circumstances exist. *Id*. (citations omitted).

The Eliasons may have had maladies occur throughout their life, like we all have, but none of them rise to the level of being of the type of additional exceptional circumstances the courts recognize as being sufficient to pass that prong of the *Brunner* test. Amy did not make much of an effort to get her medical certification which would have provided her with additional usable job skills. *See generally* (Appx. 57-60). The Bankruptcy Court did though, attribute Amy's lack of certification to her university generally, an impermissible consideration which effectively punishes the lender for Amy's education choices. *Roberson*, 999 F.2d 1132. The Eliasons also put forward no evidence showing that Dennis' temporary disability would be permanent. (Appx. 484). Overall, the Eliasons did not meet their high bar of proving there are additional, exceptional circumstances that would prevent repayment of their student loans in the future.

## ARGUMENT

I.   **The Evidence Does Not Support the Court's Finding that the Eliasons Met Their Very Difficult Burden to Prove Good Faith Pursuant to that Prong of the *Brunner* Test**

The Bankruptcy Court erred in its application of the "good faith" prong of the *Brunner* test by ignoring the plain language and purpose of that test as set forth in *Brunner* and precedential cases in the Seventh Circuit adopting and expanding on it. In *Brunner v. New York State Higher Education Services Corp.*, 331 F.2d 395 (2nd Cir. 1987), the court adopted the district court's conclusion and reasoning in explaining its namesake three-pronged test to determine the presence of an "undue hardship" under 523(a)(8) of the Bankruptcy *Id.* at 396; *In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985). The debtor must prove all three prongs of the test by a preponderance of evidence for the court to discharge their student loans. *Id.* at 396; *Goulet*, 284 F.3d at 777 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

The Seventh Circuit adopted the *Brunner* test in *In re Roberson*, 999 F.2d at 1135. In assessing if a debtor has met their burden under the good faith prong, the *Roberson* court set forth some factors for the courts to consider. *Id.* at 1136. Those factors include "efforts to obtain employment, maximize income, and minimize expenses." *Id.* (citation omitted). Along with considering those factors, the *Roberson* court also held that a debtor's default cannot be as a result of their own

willful or negligent actions but instead must occur from "factors beyond [their] reasonable control." *Id*. (citing *Comm'n on Bankr. Laws.*, at 140, n. 16; *Perkins v. Vermont Student Assistance Corp*., 11 B.R. 160, 161 (Bankr. D. Vt. 1980) ("buying new car 'self[-]imposed' hardship") (other citations omitted)).

The justification for having a good faith prong according the *Brunner* district court is based on comments in the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93-137, Pt. I, 93d Cong., 1st Sess. (1973) at 140, n. 16 and the stated purpose for section 523(a)(8) of the Code, which is "to forestall students, who frequently have a large excess of liabilities over assets solely because of their student loans, from abusing the bankruptcy system" to eliminate them. *Brunner*, 46 B.R. at 755 (citing Comm'n on Bankr. Laws, at 140, n. 14). Consequently, the *Brunner* district court opined, the effect of the good faith requirement is to make "student loans a very difficult burden to shake." *Id*. at 756.

The Court then held that to meet the "very difficult burden" that is the good faith test, the debtor must prove they made "good faith efforts to repay the loan[;]" and that "the forces preventing repayment are truly beyond his or her reasonable control." *Id*. (citing *In re Rappaport*, 16 B.R. 615, 617 (Bankr. D.N.J. 1981)).

Moreover, the Seventh Circuit as recently as 2015 reaffirmed the notion that "good faith under *Brunner* necessarily implicates the debtor's past efforts to pay down the debt at issue[,]" meaning attempts to pay down other student loans or another debt do not factor into the good faith analysis. *Tetzlaff*, 794 F.3d at 761 (citing *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013)). It is pretty obvious that making actual payments toward the student loans at issue is an important factor in showing good faith in the Seventh Circuit.

Whether applying for forbearances or deferrals on the student loans is probative toward a debtor's good faith does not appear to have resolved in the Seventh Circuit. In at least one instance, though, the court seemed to look disapprovingly on applying for deferrals as evidence of good faith. In *Goulet* 284 F.3d at 779. In *Goulet*, the bankruptcy court found that the debtor's deferrals showed good faith while the district court on review found "little evidence that [the debtor] made a good faith effort to make *actual payments* on his loans." *Id.* (emphasis added). The Seventh Circuit did not see the need to resolve the question because the debtor did not prove one of the predicate prongs of the *Brunner* test, but did note "it is hard to see good faith in paying nothing when obtaining payment deferrals." *Id.* at 780. While dicta, this language illustrates the Seventh Circuit's thinking on the issue.

Some sister circuits seem to share the Seventh Circuit's hesitation about finding good faith in seeking deferments and forbearances, particularly in cases when no payments are made after the expiration of the deferment period. For example, in *In re Spence*, 541 F.3d 538, 545 (4th Cir. 2008), the court found that the debtor did not meet the good faith test. In so doing, the court noted that "obtaining the deferment of student loans is not sufficient to demonstrate a good faith effort to repay them when the deferment is followed by not one payment or any effort to work out a reasonable repayment schedule." (citing *In re Mosko*, 15 F.3d 319, 324 (4th Cir. 2008)(other citation omitted)).

Some courts, though, appear to credit a debtor seeking a deferment or forbearance as evidence of good faith, at least without additional factors playing into the equation. *See*, *for example*, *In re Cheesman*, 25 F.3d 356, 362 (6th Cir. 1994) (dissenting op.) (citing *Brunner*, 831 F.2d at 397 (lack of good faith by not seeking deferment)); *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 783 (8th Cir. 2009). Additionally, courts have found the failure to negotiate a payment arrangement prior to seeking discharge as evidence of bad faith. *Cheesman*, 25 F.3d at 362 (other citation omitted).

Here, the Bankruptcy Court essentially suggested that BOND argued that the Eliasons inability to make any payments precluded them from proving good faith. (Appx. 45-46). BOND is not arguing that the Eliasons are automatically foreclosed

from proving good faith for a lack of payments, just that the Eliasons complete lack of any payments on the student loans is highly indicative of their lack of good faith and when combined with the other probative factors of good faith, they did not meet their burden of proving their good faith attempts to repay their loans under the *Brunner* test.

Other evidence in this case relating to the good faith analysis follows. Amy testified that she has an associate's degree in medical assisting from Globe University and that she is not certified as a medical assistant. (Appx. 56:13-18). Amy claims she did not get her certification for various reasons, such as, somebody at Globe University misled her, she did not want to drive to Woodbury, Minnesota because of her high-risk pregnancy, and because she spent long periods of time bedridden with a high-risk pregnancy. (Appx. 57:16-58:1) Amy also mentioned the $200 cost for certification as a factor (Appx. 58:13-59:1), but later during cross examination Amy hedged about that reason for not getting her certification (Appx. 96:8-20). Amy graduated in December of 2011 and her son was born in June 2012. (Appx. 59:13-17).

Amy's counsel then asked her if she made any efforts to get her certification after her son's birth. (Appx. 60:2-3). She claimed that somebody from her college program told her that she had been out of class too long to pass the test. (Appx. 60:4-10). Based on the context of that line of questioning, and the surrounding

discussions, the evidence supports that Amy contacted the school about getting her certification some time fairly close to her son's birth in June of 2012 and there is no evidence that the tried to obtain her certification at any time afterwards.

Later, Amy stated that after graduation she contacted BOND to work with them because she could not afford the payments when they became due and BOND offered her deferment. (Appx. 64:5-14). Dennis has student loans as well but testified that they are on a probationary period for permanent disability deferment but that prior to that point his payments were either in deferment or typically zero dollars because of an income-based payment plan. (Appx. 116:1-117:23).

BOND's representative testified that prior to default there were zero payments made from either Amy or her co-signer prior to default due to multiple periods of deferment and forbearance. (Appx. 144:4-16, 148:8-19). Amy testified prior that, in effect, she was not sure whether any payments were made. (Appx. 63:21-25). After the deferments and forbearances expired there was a nine to 12-month window where the Eliasons made no payments at all on Amy's loans. (Appx. 145:3-9). In 2018 when that period expired, BOND treated the loan as in default with no further payments made. (Appx. 145:12-13, 166:14-19).

Also probative of a lack of good faith, BOND could not send Amy notices of default at some point because they no longer had a valid address for her. (Appx.

166:20-25, 167:1-18). If a person moves residences and wants to stay in touch with the lender to perhaps work out a payment plan or receive correspondence, good faith would counsel toward keeping a current address with the lender. The Eliasons also did not try to contact BOND after collections restarted in January of 2021. (Appx. 167:8-25, 168:1-9), again indicative of a lack of good faith. They filed bankruptcy in October of 2021.

The Eliasons put minimal, if any, effort into minimizing their expenses. When asked about why she ate out a lot, Amy opined that sometimes it was cheaper basically. (Appx. 99:14-100:1-5). A look at the Eliason's Exhibit 6 (starts at Appx. 319), which is their checking account statements from February of 2023-March of 2022 illustrates the Eliasons lack of minimization of their expenses. One, of course, recognizes the need or desire to eat out from time-to-time for any number of reasons, but common sense tells us that the bank statements show far beyond the occasional night out for a special occasion or something.

For example, on the March 15, 2023 statement there are trips to McDonald's and Subway on February 21[2] totaling \$55,[3] a trip to Josef Cheesecake and Fazolis totaling \$72 on February 27, a trip to Charley's Philly on March 6 for \$18, a trip to Perkins for \$45 on March 7, a trip to Pizza Hut for \$62 on March 8, a trip to Texas

---

[2] Dates represent date posted to checking account, not necessarily date visited.
[3] Amounts approximated to save space.

Roadhouse March 10 for $112, and a trip to Noodles & Company on March 13 for $22. (Appx. 321-322).

A look through the rest of the statements shows a similar pattern. *See generally* (Appx. 319-361). Amy implied in her testimony that sometimes it cheaper to eat out than go to the grocery store and buy food. (Appx 100:1-5). The Court also bought this explanation, stating "Plaintiff's credibly explained that at times eating out was as cheap as buying and preparing food." (Appx. 48). The evidence does not support that the Eliasons attempted to minimize their spending habits.

Amy also did not prove she tried to maximize her employment. Out of school in 2011 her first job was likely a part-time job (Amy did not remember exactly). (Appx. 66:18-23). Amy rightfully had to take care of her son for a bit after his birth in 2012. (Appx. 67:17-68:1) but there Amy provided no evidence that he required care all the way into 2014, when Amy again got a part-time job as a registration clerk for about nine (Appx. 68:7-25-69:1-2). In 2015 Amy then took a full-time job in 2015, increasing her pay from $12/hour to $13.50/hour and working there until around June 2016 when her mother passed away. (Appx. 69). Amy needed some time off afterwards. (Appx. 69:20-25), but in a few months got a full-time job as a claims processor, working there from October 2016-December 2018 and making approximately $15/hour. (Appx 70:1-13). Amy then sought

employment at a production company until December 2019 where she made about $18/hour. (Appx. 70:12-25, 71). Amy lost her job as a result of a layoff. (Appx. 70:10-11). Sometime later, Amy worked as a taxi driver making about $13.50/hour until December of 2022, when she left for a bartending job making $7/hour plus tips because her hours got cut back. (Appx. 72:10-19). At the time of trial, Amy had worked for a travel stop for about three months. (Appx. 72:23-25, 73:1-6). Amy also testified she had a few other jobs (Appx. 73:7-25, 74:1-4).

While it is true that Amy's income steadily increased, it is also true that she has had a mix of part-time and full-time jobs. Amy also does not seem to stay at her jobs for very long. There is also no evidence in the record that Amy tried too hard to maximize her employment, such as like in *Krieger*, 713 F.3d at 883 where the debtor applied for "200 or so" jobs in the decade. Amy also made no real effort to find a job in the medical assisting field she received a degree in beyond maybe a few of her early jobs that appeared to have only a tangential relationship with her education. (Appx. 74:5-19). Yes, she stated that most of the jobs needed a certification, but that legal effect of that is discussed throughout this brief. The burden of proof is on Amy and she did not prove that she tried to maximize her employment.

Overall, the record shows the Eliasons made no payments at all on Amy's student loans. The record also shows the Eliasons did not minimize their expenses.

Amy did not try to maximize her employment. Whether the forbearances and deferrals count as good faith or not, the Eliasons went a number of years without making payments when those ran and did not make any contact with BOND, period, let alone to work out some kind of payment arrangement. It is the Eliasons burden to show they made a good faith effort to repay Amy's student loans by a preponderance of the evidence. They did not. The Bankruptcy Court erred in finding the facts supported otherwise and the Court should overrule its decision.

## II.    The Evidence Does Not Support the Court's Finding that the Eliasons Met Their High Bar to Prove Additional Exceptional Circumstances Pursuant to that Prong of the *Brunner* Test

The Eliasons have to prove that "there are 'additional exceptional circumstances' making it improbable they will ever be able to repay." *Modeen*, 586 B.R. at 302-303 (quoting *Roberson*, 999 F.2d at 1136).  Put another way, the "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Tetzlaff*, 794 F.3d at 759 (quoting *Roberson*, 999 F.2d at 1136 (other citation omitted)).

The courts "have interpreted this to require 'additional circumstances which make it reasonably certain that the debtor's circumstances are unlikely to improve.'" *Modeen*, 586 B.R. at 303 (quoting *Nelsen*, 404 B.R at 895 (quoting *Hoskins v. Educ. Credit Mgmt. Corp.* (In re *Hoskins*), 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003))). The bar for a debtor to satisfy this element is high. *Modeen*, 586 B.R. at 303.

Some of the factors the court has used to determine if a debtor's circumstances are unlikely to improve are "psychiatric problems, lack of usable job skills, and severely limited education" among others. *Id* (citing *Goulet*, 285 F.3d at 778 (citing *Roberson*, 999 F.2d at 1135-1137)). The court in *Modeen* does a good job of summarizing cases applying this element and a summary of them follows.

Courts have found that a "convicted felon with alcohol and substance abuse" issues that was an "'intelligent man' who did not lack usable job skills and 'could apply himself when he desired[,]'" but instead had "'simply failed to diligently pursue employment such that he would be able to alleviate his financial burdens[,]'" did not have those "additional exceptional circumstances" to meet the element. *Modeen*, 586 B.R. at 303 (quoting *Goulet*, 284 F.3d at 778).

Courts have also found that a debtor "with a bleak forecast for the near future" because he had no employment and no drivers' license because of a DUI,

along with wrist and back injuries did not qualify as the type of additional exceptional circumstances to meet the prong either, finding that he could get over his medical condition at some point, would eventually get his driver's license back, and nothing prevented him from finding future employment. *Id.* (quoting *Roberson*, 999 F.2d at 1147).

The Court in *Modeen* also brought up a case where the Seventh Circuit reinstated a student loan discharge. *Id.* at 303. That case is *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882 (7th Cir. 2013). In *Modeen*, the court described the debtor in *Krieger* as being a "53-year old living in a rural area who had not held a job since 1986." *Modeen*, 586 B.R. at 303 (citing *Krieger*, 713 F.3d at 884). As part of that decision, the *Krieger* Court found those factors led the court to conclude "'[t]hat's not the sort of background employers are looking for. There is no reason to think that a brighter future is in store.'" *Id.* (quoting *Krieger*, 713 F.3d at 884).

Addressing the *Modeen* case itself, the court found that Ms. Modeen was employed now and having jobs in the last five years, along with marketable skills, and an "Associate of Arts degree , . . . [along with a technical diploma] qualif[ying] her to help provide care to aging adults." *Modeen*, 586 B.R. at 303. Furthermore, the Court found that "[s]he has shown persistence in finding and obtaining employment[, and] [w]hen it became apparent that a career change . . .

may be personally satisfying but not as fruitful financially, she returned to more gainful employment." *Id*. Moreover, the Court noted that Modeen tried to supplement her income by taking on a second job. *Id*. Finally, the Court found that those factors do "not show[] the exceptional hopeless circumstances that would justify a finding in her favor under" the Bankruptcy Code provision for discharging her student loans. *Id*.

Based on the testimony, it is reasonable to conclude that Amy not getting her certification is not by some exceptional circumstance beyond her control. The record shows no real attempt by Amy to even try to pursue her certification beyond the time shortly after her son was born. *See generally* (Appx. 57-60). Her reasons for not pursuing her certification do not reflect the kind of further inquiry a person truly interested in obtaining her certification would take. Amy's explanation also does not make sense, given that her testimony appears to show that her medical certification degree at least in some way was geared toward taking the final certification test. (Appx. 58:13-25, 59:1).

The Bankruptcy Court also seemed to put the burden on BOND to disprove that Dennis' disability was permanent. (Appx. 43). BOND does not have the burden to prove anything, the Eliasons do. Either way, the evidence shows that Dennis' disability is unlikely to persist into the indefinite future. The Court found that Dennis' testimony showed he "had significant limitations that will continue

Page 25 of 30

indefinitely." (Appx. 34). The evidence does not support that. The best available evidence on Dennis' disability is the Social Security Administration's adjudication of his disability. (Appx. 471-485). The administrative law judge found that, "The claimant was not disabled prior to January 1, 2019, but became disabled on that date. . . . His disability is expected to last twelve months past that date." (Appx. 483). The ALJ also decided that "Medical improvement is expected with appropriate treatment [and recommends review of whether the disability continues] in 18 months" from the date of the decision (June 27, 2019). (Appx. 484).  An adjudication of a temporary disability that is likely to improve is not evidence probative toward an additional exceptional circumstance preventing repayment in the future.

Furthermore, the Bankruptcy Court seemed to blame Globe University's status for extensive support in its finding that the Eliasons faced additional circumstances beyond their control. For example, the Court found "unfortunate circumstances impacted [the Eliasons] employment [such as] misrepresentations by Globe." (Appx. 33). Also, "Amy's lack of certification resulted from factors beyond [her] control" due to her being "misled" about the requirements for certification, among other reasons. (Appx. 39). Moreover, the Court found "it's unclear what effect Globe University's closure in 2017 has on . . . Amy's ability to sit for a certification test" along with a footnote highlighting a case in Minnesota

about Globe University's closing. (Appx. 42). In short, the Court's inquiry about Amy's past, present, and future circumstances relies heavily, either directly or indirectly, around the quality of education from Globe University. That is impermissible.

Consideration of the underlying quality of education is impermissible because the Court is essentially punishing BOND for the quality of Amy's education, when it should not factor into the analysis according to the case law, including in the Seventh Circuit. The *Brunner* district court noted disapprovingly other courts' finding that an essentially worthless education is a reason to discharge the student loans under the good faith prong, stating "[c]onsideration of this factor is not only improper, it is antithetical to the spirit of the guarantee program." *Id.* at n. 3. *See also In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (adopting rationale in *Brunner* district court on issue stating, "government does not guarantee the student's future financial success" and student responsible for consequences of poor return on investment)). Thus, consideration of the quality of education is improper in *Brunner* test. *Id. See also*, *In re Katz*, 318 B.R. 495, 501 (citing *Roberson*, 999 F.2d at 1136-37) (Seventh Circuit "specifically rejected" argument discharge warranted if cannot work in field received education for).

The Court in *Modeen* also addressed additional issues factors bearing on the issues at here. One issue Modeen brought up is increased rent as bearing on finding

an exceptional circumstance to meet that element. *Id.* at 303-304. The Court dismissed Modeen's contention, noting an increase in rent "and decrease in pay are simply not 'exceptional' as the Seventh Circuit has defined the term." *Id*. at 304.

Amy did seemingly offer some testimony that she was caring for family members such as her son and one of her parents at various times. With regard to her son, it is understandable after having problems with her pregnancy it would take some extra time to care for him, but there is nothing in the record showing that he continues to suffer from problems that require her to curtail working hours now or in the future. Additionally, the parent she had to care for is now deceased.  Both the birth of Amy's son and her parent's passing were years ago. Those conditions obviously will not continue indefinitely.

Overall, the Eliasons did not prove they met the additional, exceptional circumstances prong of the *Brunner* test. The evidence does not support the Bankruptcy Court's finding that the Eliasons will have additional, exceptional circumstances in the future warranting discharge under that prong. The Court should reverse the Bankruptcy Court's holding otherwise.

## CONCLUSION

The Eliasons have the burden to prove that they meet all three prongs of the

*Brunner* test to get a discharge of their student loans. They did not prove either the

good faith or additional exceptional circumstances prongs of the *Brunner* test. The

Bankruptcy Court's findings that they did meet their burden of proof on those

prongs is clearly erroneous, and as a result, the Court should reverse its decision.

Respectfully submitted
BANK OF NORTH DAKOTA

By:/s/C.Anthony Crnic_____
Special Assistant Attorney General

## **PROOF OF SERVICE**

I, C. Anthony Crnic certify that on October 18, 2023 I filed this document

with CM/ECF, causing it to be served to the parties entitled thereto.

/s/ C. Anthony Crnic_____

C. Anthony Crnic