IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BANK OF NORTH DAKOTA,

                              Appellant,

                v.                                    OPINION and ORDER

AMY MARIE ELIASON and DENNIS WESTLEY                  23-cv-562-jdp
ELIASON,

                Appellees.

---

The question in this bankruptcy appeal is whether Amy Marie Eliason and Dennis Westley Eliason are entitled to a discharge of Amy's student loans. The bankruptcy court concluded that the Eliasons were entitled to a discharge because repaying the loans would cause them undue hardship. The Bank of North Dakota, which provided the loans to Amy, appeals the judgment.

The resolution of the bank's appeal comes down to the standard of review. The types of determinations the bank is challenging have been described by the court of appeals as factual findings that may not be overturned unless they are clearly erroneous. The bank has not met that standard, so this court will affirm the bankruptcy court's judgment.

BACKGROUND

In 2010 and 2011, Amy Marie Eliason obtained two loans from the Bank of North Dakota to attend Globe University in Eau Claire, Wisconsin. She graduated with an associate degree in applied medical science in 2011, but she has not obtained a certification for being a medical assistant or a job in her field. Instead, she has had various other jobs since graduating, including as a registration clerk, an insurance claims processor, a taxi driver, and a bartender.

She currently works as a clerk at a convenience store. Dennis Westley Eliason, Amy's husband, is classified as disabled by the Social Security Administration, with a disability onset date in 2019.

Amy has not made any payments on her loans, but she received multiple deferments over the years. The Eliasons owe more than $59,000 to the bank.

In 2021, the Eliasons filed a Chapter 7 bankruptcy petition. In 2023, they filed an adversary proceeding against the bank, seeking a discharge of Amy's student loans. After holding a trial, the bankruptcy court ruled in favor of the Eliasons in the adversary proceeding. The bank appeals.[1]

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

This appeal is about the application of 11 U.S.C. § 523(a)(8), which states that a debtor may not discharge a debt for a student loan unless the debt "would impose an undue hardship on the debtor and the debtor's dependents." The Court of Appeals for the Seventh Circuit has interpreted the phrase "undue hardship" as containing three elements. First, the debtor could not maintain a minimal standard of living for herself and her dependents if forced to repay the loan. *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 758–59 (7th Cir. 2015). Second, it is likely that the debtor will be unable to pay the debt "for a significant portion of the repayment period" for reasons that are beyond the debtor's control. *Id.* at 760. Third, the debtor has made

---

[1] For reasons they do not explain, the Eliasons did not file a brief with this court. Regardless, it remains the bank's burden to show that the bankruptcy court erred under the relevant standard of review.

good faith efforts to repay the loan. *Id.* at 759. Good faith is measured by the debtor's attempts to obtain employment, maximize income, minimize expenses, and any other efforts to repay the loans. *Id.* at 760. The debtor must establish each of these elements to obtain a discharge. *Id.* at 759.

The bankruptcy court concluded that the Eliasons satisfied each of the three elements. As for whether the Eliasons could not maintain a minimal standard of living if forced to repay the loans, the court relied primarily on two reasons to support a conclusion that they could not: (1) the Eliasons' salaries barely put them above the federal poverty line (less than $25,000); and (2) the Eliasons' expenses for basic necessities did not leave them with discretionary income. The bank does not challenge the bankruptcy's court conclusion on this element, so this court will assume that the Eliasons satisfied this element.

As for whether it is likely that the Eliasons will be unable to repay their debt in the future, the bankruptcy court said that Amy's future income was limited by her failure to obtain her medical certification, Dennis was limited by his disability, and both issues "resulted from factors beyond either of their control." Dkt. 2-5, at 14. As for Amy's failure to get her certification, the court noted Amy's testimony that a university official told her that it was too late to get the certification without taking more classes. So Amy is limited to unskilled work for the foreseeable future. *Id.* at. 16. As for Dennis, the court noted that the Social Security Administration found him to be disabled as a result of several severe impairments, including spine disorders and osteoarthritis. *Id.* at 18.

As for whether the Eliasons had made good faith efforts to repay the loans, the bankruptcy court acknowledged that the Eliasons had not made any payments on their loans. But the court concluded that the failure to pay was beyond their control. The court noted

Amy's testimony that the university initially told her that it would provide her with a medical certification, but then informed her that it could not a few months before her graduation. She tried to transfer her credits to a different school, but she "discovered that her credits . . . would not transfer." *Id.* at 2. She could have gone to Minnesota and paid a fee to become certified, but she was experiencing difficulties with her pregnancy at the time of graduation, and she was bedridden. Later that year, the university told her that too much time had elapsed, so she would have to take more classes to get her certification. Amy provided care to her terminally ill mother in 2015 and 2016, and Dennis became disabled. *Id.* at 22. The court also noted that Amy requested and received at least 36 months of deferment and 18 months of forbearance, "indicat[ing] she was diligent in reaching out to Defendant [for] some time and that she and Dennis were facing substantial financial difficulties." *Id.* at 21. The court rejected the bank's argument that the Eliasons were not minimizing their expenses because they bought meals at fast food restaurants, reasoning that the Eliasons "credibly explained that at times eating out was actually as cheap as buying and preparing food." *Id.* at 23.

This court reviews the bankruptcy court's legal determinations without deference, and its factual findings for clear error. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). The bank contends that this court should apply a de novo standard of review to the bankruptcy's court's determinations at issue in this case. But the court of appeals has stated that the "statutory inquiry [of] 'undue hardship' [is] a case-specific, fact-dominated standard, which implies deferential appellate review." *Krieger v. Educational Credit Management Corp.*, 713 F.3d 882, 884 (7th Cir. 2013). And the court has applied the clearly erroneous standard to a bankruptcy court's conclusions about whether a set of facts satisfies elements of § 523(a)(8). *See*, *e.g.*, *Tetzlaff*, 794 F.3d 756, 759–60 (applying clearly erroneous standard to question

4

whether debtor would be able to pay debt in the future); *Krieger*, 713 F.3d at 884 (applying clearly erroneous standard to question whether debtor made good faith efforts to pay debt). Those are the determinations that the bank is asking this court to review, so the relevant standard is clear error.

The bank cites *Goulet v. Educational Credit Management Corp.*, 284 F.3d 773, 777 (7th Cir. 2002), to support the application of de novo review. *Goulet* states that the "the inquiry of "whether [the debtor's] circumstances meet [§ 523(a)(8) is] a question of law subject to de novo review." But *Goulet* did not explain what it meant by this, and it also said that factual findings relevant to deciding undue hardship are reviewed for clear error. *Id.* The court of appeals has since clarified in cases like *Krieger* that de novo review applies only to pure legal questions, and that the district court and court of appeals must defer to the bankruptcy court's resolution of mixed questions of law and fact, such as whether the debtor will be able to repay the loan and whether the debtor acted in good faith. 713 F.3d at 884.

The bank challenges the bankruptcy court's findings that the Eliasons will be unable to repay their loans in the future and that the Eliasons made good faith efforts to repay Amy's loans, but the bank does not address the standard of review regarding these findings. In fact, the bank mentions the clearly erroneous standard only twice in its brief, once when acknowledging the standard, *id.* at 7, and once in its conclusion when it states without explanation that the bankruptcy court's findings of fact were clearly erroneous, *id.* at 29. The bank's failure to grapple with the standard of review is reason alone to affirm the bankruptcy court's decision. Regardless, the court concludes that the bankruptcy court's findings are not clearly erroneous.

As for whether the Eliasons could repay the loans in the future, the bank says that neither Amy nor Dennis can show future inability to pay. Regarding Amy, the bank says that it is "reasonable to conclude" that getting her certification is within her control. Dkt. 3, at 25. The bank says that Amy has not made sufficient efforts to obtain her medical certification, she gave inconsistent reasons for her failure to do so, and the burdens caused by pregnancy complications and caring for her ill mother are in the past.

It does not matter whether the reasons the bank cites would make it "reasonable to conclude" that Amy could repay her loans in the future. Again, the question is whether the bankruptcy's court decision to the contrary is clearly erroneous. The bankruptcy court credited Amy's testimony that the university told her that she could no longer obtain her certification without going back to school (and presumably incurring more debt). The bank cites no evidence that Amy can obtain her certification now, and it does not otherwise explain why the bankruptcy court's finding is clearly erroneous.[2]

The bank is correct that nothing prevents Amy from working now, but neither the Eliasons nor the bankruptcy court have argued to the contrary. Rather, the bankruptcy court's reasoning was that Amy will be limited to unskilled work, so she will not be able to make enough money to pay off her loans. Again, the bank points to no evidence undermining that finding. It is true that Amy is working only part-time now, but the bankruptcy court credited Amy's testimony that the reduced income is offset by the job's location, which is close enough to the Eliason's home that Amy can walk to work, eliminating the need for a car to drive to work. Dkt. 2-5, at 15. Again, the bank offers no basis to challenge that finding.

---

[2] The bank does not contend that the bankruptcy court's finding rests on inadmissible hearsay, so this court does not consider that question.

Regarding Dennis, the bank says that the "evidence does not support" the bankruptcy court's finding Dennis's disability will likely endure. Dkt. 3, at 26. The bank points to a statement in the ALJ's decision finding Dennis disabled that "[m]edical improvement is expected with appropriate treatment," and that the ALJ recommended a "continuing disability review" in 18 months. Dkt. 3-1, at 486. The bankruptcy court acknowledged that statement but concluded that it was not dispositive because it had already been 18 months since the decision, Dennis continued to be classified as disabled, and the bank did not present any evidence of potential improvement. Dkt. 2-5, at 18.

This issue presents a somewhat closer question. It would have been reasonable for the bankruptcy court to require the Eliasons to come forward with more robust evidence about Dennis's continuing disability. But this court cannot say that the bankruptcy court's finding was clearly erroneous. The ALJ did not explain the basis for his statement that Dennis's neck and back conditions are likely to improve, the ALJ did not say how much his condition was likely to improve, and the bank points to no evidence that Dennis's condition has improved. In the absence of contrary evidence, it was not clearly erroneous for the bankruptcy court to find from Dennis's continuing disability that his condition was long term.

The bank also challenges the bankruptcy court's finding that the Eliasons made good faith efforts to repay their loans. The bank does not challenge the bankruptcy court's legal determination that a court may find good faith even when, as in this case, the debtors have not made any payments. The court agrees with this concession. The question is not simply whether the debtors *did* make payments; it is whether they *could have* made more payments by increasing their income or lowering their expenses. *See Tetzlaff*, 794 F.3d at 758–59.

The bank contends that the bankruptcy court erred in finding that the Eliasons reasonably could not have made more payments, asserting the following reasons: (1) Amy has not tried to get her certification since 2012; (2) the Eliasons eat out a lot, showing that they are not minimizing their expenses; (3) Amy has not explained why she waited two years to seek employment after giving birth to her son; (4) Amy has not consistently worked fulltime; (5) Amy has not make sufficient efforts to get a job in her field; and (6) Amy did not keep her address current and did not contact the bank when it started the collections process in 2021.[3] This court is not persuaded that any of these reasons require reversal of the bankruptcy court's decision.

As for Amy's failure to get her certification after 2012, the court already addressed this issue in the context of discussing the Eliasons' potential ability to repay the loans in the future. Specifically, the bankruptcy court found that Amy reasonably believed that it was too late for her to obtain her certification, and the bank has not challenged that finding as clearly erroneous. So Amy's failure to get her certification is not evidence of a lack of good faith.

As for the Eliasons' eating out, the evidence cited by the bank shows that the Eliasons were eating out at fast food restaurants. The bankruptcy court found that the Eliasons' restaurant bills were not greater than what the Eliasons would have spent on groceries. Dkt. 2-5, at 23. Again, the bank does not challenge that finding as clearly erroneous, so the Eliasons' restaurant habits are not evidence of a lack of good faith.

---

[3] The bank also devotes multiple pages of its brief to the question whether seeking deferments and forbearances qualifies as good faith. Dkt. 3, at 14–16. The court will assume for the purpose of this decision that such conduct does not in itself represent a good faith effort to repay the loan. Regardless, that conduct is not affirmative evidence that the Eliasons could have repaid their loans, so the court may disregard that evidence.

As for the bank's third, fourth, and fifth reasons—related to Amy's efforts to find work—the bank forfeited those arguments by failing to raise them with the bankruptcy court. *See* Case no. 23-ap-2-cjf, Dkt. 20. In any event, the bank has not shown that any of those arguments would require reversal. Amy explained during the trial that she was off work after the birth of her son because he was born premature and required extra care. Dkt. 3-1, at 69–70. The bank cites no contrary evidence. The bankruptcy court also credited the reasons for Amy not consistently working full time during other points of time, including that she was caring for her mother and that she accepted a part-time job within walking distance of her home to save money on transportation.  Dkt. 2-5, at 15. Again, the bank does not challenge these findings. As for Amy's efforts to get a job in her field, the bankruptcy court found that Amy's ability to get a higher-paying job in her field was limited by her lack of a certification. *Id.* at 14. Once again, the bank does not challenge that finding as clearly erroneous.

This leaves the bank's argument that the Eliasons did not act in good faith because they did not maintain communication with the bank after they defaulted on the loans. But the bank does not explain how this evidence is relevant. It may show that the Eliasons were irresponsible, but it has no bearing on whether they maximized their income, minimized their expenses, or otherwise made good faith efforts to repay their loans. The Eliasons' failure to maintain contact did not affect their ability to pay.

The bank has not shown that the bankruptcy court clearly erred when it found that the Eliasons would likely be unable to pay back their loans in the future and that they made good faith efforts to repay their loans. This court will affirm the bankruptcy court's judgment.

ORDER

IT IS ORDERED that the judgment of the bankruptcy court is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered October 25, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge